KATE McCANNA *vs.* CHARLES ANDERSON, *et al.*

Opinion filed May 14th, 1897.

**Homestead—Rights of Unmarried Man.**

> Under the statutes of Dakota Territory as they existed in 1888, a single man, who never had wife or child, was not entitled to the homestead exemption specified in the territorial laws.

Appeal from District Court, Grand Forks County; *Templeton*, J.

Action by Kate McCanna against Charles Anderson and others. Judgment for plaintiff, and defendants appeal.

Reversed.

*W. H. Standish*, for appellants.

*Bangs & Fisk* and *George A. Bangs*, for respondent.

BARTHOLOMEW, J. In this case a demurrer to the complaint was overruled, and, the defendants declining to plead further, judgment was entered in conformity to the prayer of the complaint, and the defendants appeal. It is conceded by both parties that but a single question is involved in the case: Could a single man who never had wife or child, and who had no one living with him, dependent upon him for support, claim the benefit of a homestead exemption under the laws of Dakota Territory as they existed in 1888? An affirmative answer to this question affirms the judgment below, while a negative answer must reverse it.

The answer must be based entirely on the territorial laws. The federal homestead law is in no manner involved. The point has never been ruled in this jurisdiction, and its decision requires the construction of Ch. 37 of the Territorial Session Laws of 1875. This statute continued in force until 1891. It appears in the Comp. Laws of 1887 as § § 2449 to 2468, inclusive. We cite from the Comp. Laws such sections as bear upon the point under discussion:

Section 2449: "The homestead of every family resident in this territory, as hereinafter defined, whether such homestead be owned by the husband or wife, so long as it continues to possess the character of a homestead, shall be exempt from judicial sale, from judgment lien, and from all mesne or final process issued from any court."

Section 2450: "A widow or widower, though without children, shall be deemed a family while continuing to occupy the house used as such at the time of the death of the husband or wife."

Section 2451: "A conveyance or incumbrance by the owner of such homestead shall be of no validity unless the husband and wife, if the owner is married and both husband and wife are residents of the territory, concur in and sign the same joint instrument."

Section 2458: "The owner or the husband or wife may select the homestead, and cause it to be marked out and platted and recorded as provided in the next section."

Section 2463: "Upon the death of either husband or wife, the survivor may continue to possess and occupy the whole homestead until it is otherwise disposed of according to law; and upon the death of both husband and wife the children may continue to possess and occupy the whole homestead until the youngest child becomes of age."

Section 2467: "Every family, whether consisting of one or more persons, in actual occupancy of a homestead as defined in this chapter, shall be deemed and held to be a family within the meaning of this chapter."

Before discussing these sections, it will be advantageous to determine just what is meant by the word "homestead." The statute is careful to fix its area, whether in country or town, but is not specific in stating what shall be necessary to stamp this area with the homestead character. The Supreme Court of New Hampshire, in *Hoitt* v. *Webb*, 36 N. H. 166, thus defines the word: "It is the home, the house and adjoining land, where the head of the family dwells; the home farm." Black's Law Dictionary further defines it to be "the fixed residence of the head of a family, with the land and buildings surrounding the main house." 9 Am. and Eng. Enc. Law, p. 424, reads: "Homestead is the house and land constituting a family residence. In law it is such family residence exempt from forced sale." The reasons why the homestead, thus defined, has been exempted from forced sale, have been repeatedly stated by courts. "It was an enlightened policy, looking to the general welfare as well as to that of the individual citizen, which dictated the passage of the homestead act; and the obvious intent of the act is to secure to every house-holder or head of a family a home, a place of residence, which he may improve and make comfortable, and where the family may he sheltered, and live beyond the result of those financial misfortunes which even the most prudent and sagacious cannot always avoid." *Wassell* v. *Tunnah*, 25 Ark. 103. Similar language is used in *Charless* v. *Lamberson*, 1 Iowa, 441; *Cook* v. *McChristian*, 4 Cal. 26; *Franklin* v. *Coffee*, 18 Tex. 415. And this court said in *Fore* v. *Fore*, 2 N. D. 267, 50 N. W. Rep. 714: "Ample provision for the establishment of the home and maintenance of the family has ever been the fixed policy in this jurisdiction." And, after citing the homestead provisions, we further stated: "It is too plain for question that these various provisions were intended not for the benefit of the husband and father, but for that of the family." It will be readily conceded that in some states, by express statutes, the benefits of the homestead provisions have been extended beyond the lines indicated in the above definitions and citations. But when the legislature

intends to depart from the established meaning of the word "homestead," when it intends to depart from the original objects and purposes of the homestead provisions, when it intends to entirely divorce the homestead exemption from the family relation, when it intends to extend that exemption to every person—man or woman, married or unmarried, adult or infant—who owns and resides upon not to exceed 160 acres of land, let its value be what it may, we are at least warranted in requiring the legislature to use reasonably clear and unequivocal language expressing such intent. But it is claimed that § 2467, Comp. Laws, manifests such intent. We quote it again: "Every family, whether consisting of one or more persons, in actual occupancy of a homestead as defined in this chapter, shall be deemed and held to be a family within the meaning of this chapter." Under this section it is argued, in support of the judgment below, that any person—no distinction or limitation whatever—owning and occupying a tract of land would be entitled to the benefits of a homestead exemption therein. The argument is this: If the one person mentioned in said section only includes those who come within the conditions and circumstances in which one person could claim the homestead under preceding sections of the act, then such section is useless, as the preceding sections sufficiently provide for such cases. This argument has force. If the section stood alone, its force would be greater; but even then the particularly inappropriate language used to express the thought that it is claimed to express would leave the matter in doubt. If, as is urged, the legislature intended to extend the homestead exemption to any and every owner of land who lived on the same, why did it not say "every owner in actual occupancy of a homestead," etc.? This would have been clear and convincing. But, further, if such was the legislative intent, what conceivable necessity existed for defining the word "family" any where in that chapter? We say unhesitatingly that, if the contention of respondent be sound, then the work "family" has no legitimate place in that chapter from first to last. Its use is

confusing, and utterly misleading. The first section (2449, Comp. Laws,) instead of saying "the homestead of every family resident in this territory as hereinafter defined," etc., should have declared "the homestead of every person resident in this territory," etc. That language would have brought the statute within the ruling in *Myers* v. *Ford*, 22 Wis. 139, cited by respondent. There the statute gave the homestead exemption where the land was "owned and occupied by any resident of the state." There could be no doubt under such language. But, again, if respondent's contention be correct, then it was useless to define a widow or widower as a family, in § 2450, because no family relation was necessary in order to stamp the homestead character on the land. The thought of that section would have been properly expressed by declaring that the surviving husband or wife, where the title to the homestead had been in the deceased, might continue to occupy, etc. Perhaps the first portion of § 2463 would have covered the thought fully, but the latter portion of that section could not stand, under respondent's contention, without modification. On the death of both parents, the fee would descend to the children, or, if but one, to such child. Under § 2463 such child might hold the homestead as such until he reached majority; but at that time, under the clear words of the section, the homestead character of the property would cease. This, of course, could not be if the homestead right depended upon ownership alone. Section 2467 must be construed in the light of the other sections in the same chapter. The statute must be construed as a whole. We find respondent's construction makes the section inconsistent with other sections of the chapter, and, while his construction strikes down at once and forever all necessity for the existence at any time of any family, as the word is generally understood, in order to give the land its homestead character, yet almost every section in the chapter, including § 2467 itself, is pregnant with suggestions that the family and the family relations must exist as the very basis of any homestead exemption rights. The respondent, recognizing this fact, seeks to avoid it

by claiming that the statute makes every man, women, or child who owns and occupies a tract of land a "family." This at once makes the statute a mass of useless fiction that would impugn the intelligence of the legislature that passed it.

We must notice the claim that other portions of the statute support respondent's contention. It is urged that the provision in § 2451, which declares that a conveyance of the homestead by the owner shall be of no validity unless both husband and wife, "if the owner is married," concur in and sign the same joint instrument, clearly contemplates that an unmarried person may own a homestead. Certainly, this is correct. The preceding section had specified an exceptional case where a surviving husband or wife might own a homestead. Had not § 2451 contained that limitation, it would have been clearly and palpably inconsistent with the preceding section. Again, § 2458 says, "The owner or the husband or wife may select the homestead," etc. This language is construed to mean that the owner need not be either the husband or wife. It will not admit of this construction. How could a husband or wife select a homestead unless one or the other were the owner? The statute simply means that the owner, or the husband or wife of such owner, may select, etc. Where the husband owns the land, and fails to select the homestead, the wife may do so, or in reversed positions, the husband may select. Any other construction makes the section an aggregation of meaningless words. We have the same thought in § 5133, Comp. Laws, in reference to exemptions of personal property. We find nothing in the statute that will sustain the construction placed upon it by the trial court. That court based its ruling upon certain language used by the learned Supreme Court of South Dakota in discussing the same statute in *Hesnard* v. *Plunkett*, 6 S. D. 73, 60 N. W. Rep. 159. That case was decided upon another point.

We concede that, as we construe the statute, there existed no clear necessity for the enactment of § 2467. But the legislature, departing from the original purposes of the homestead exemp-

tion, had specified certain instances where the family, in the usual acceptation of the word, being reduced to one person, such person should still be regarded as a family, and enjoy the benefits of the homestead exemption which was originally brought into existence by, and inured to the benefit of, the family proper. And to make its purpose and intention clear, the legislature *ex abundanti cautela*, enacted § 2467. The District Court will set aside its judgment herein, and enter an order sustaining the demurrer to the complaint.

Reversed.  All concur.