JAMES E. GAMMETT, RESPONDENT, v. GEORGE A. STORRS ET AL., APPELLANTS.

#### HOMESTEAD—WHAT CONSTITUTES.

In an action brought by the plaintiff to enjoin defendant from selling certain land on execution, on the ground that it was exempt, under section 3429, subd. 11, Comp. Laws Utah 1888, relating to homesteads, *held*, that the land, not being the residence of the plaintiff or his family, nor in any manner appurtenant to, or used in connection with, their residence, nor selected by the plaintiff for a homestead, is not within the exemption provided for in the statute, and hence subject to sale by the judgment creditor.

(No. 803.   Decided June 15, 1897.)

Appeal from the Fourth district court, Utah county.
Hon. W. N. Dusenberry, *Judge.*

Bill by James E. Gammett against George A. Storrs
and Alexander Wilkins. From a judgment for plaintiff,
defendant appeals. *Reversed.*

*Bennett, Harkness, Howat & Bradley* and *George L. Nye,*
for appellants.

*Thurman & Wedgwood,* for respondent.

Cited: Waples Hom. and Ex., p. 2; *Cook* v. *Higley,* 10
Utah 229; 9 Am. & Eng. Enc. of Law, 424; *Wright* v.
*Westhermer,* 28 Pac. Rep. 438; *Nance* v. *Hill,* 26 S. C. 227;
*Swandale* v. *Swandale,* 25 S. C. 392; *Bartlett* v. *Cattle,* 63
Cal. 366; *Barbiera* v. *Ramella,* 23 P. R. 1086.

BARTCH, J:

This is an action to enjoin the defendants, the sheriff of
Utah county and his deputy, from selling, under a writ
of execution, certain real estate of the plaintiff, which he
claims is exempt from execution by virtue of the home-
stead exemption laws.

The only material question presented on this appeal
is whether, under section 3429, subd. 11, Comp. Laws
Utah 1888, the real estate in controversy, not being the
residence of the plaintiff or his family, nor in any manner
appurtenant to, or used in connection with, their resi-
dence, nor selected by the plaintiff for a homestead, is
exempt from execution. The court below, in accordance
with the contention of the respondent, decided that the
property was exempt, and enjoined its sale. Subdivision
11, so far as material to this decision, contains language
as follows: " If the debtor be the head of a family, there
shall be a further exemption of a homestead, to be se-

lected by the debtor, consisting of lands, together with the appurtenances and improvements thereon, not exceeding in value the sum of one thousand dollars, for the judgment debtor, and the further sum of five hundred dollars for his wife, and two hundred and fifty dollars for each other member of the family. If the homestead selected by the debtor is of a greater value than is exempted under this section, it shall be optional with the judgment debtor to permit the same to be partitioned or to be sold, and to receive in money the value of the homestead as provided in this section. If the debtor so elect, the homestead may be sold as other lands are sold on execution, and, after paying the debtor the value of the homestead, the balance of the money shall be applied upon the judgment." It is insisted for the respondent that this is a statute of exemptions, and not of homestead, and that under its provisions the head of a family is entitled to an exemption out of any real property which he may own equal in value to the monetary limit specified therein, without reference to the family residence of the debtor.

We cannot concur in this position. It is true the statute does not constitute an independent or technical homestead law, and the term "homestead" implies some degree of exemption; but this may be said of every homestead law. The term "homestead," in legal parlance, possesses the quality of inalienability for the debts of the judgment debtor, if he be the head of a family, and, at the same time, conveys the idea of a home place. Waples in his work on Homestead and Exemption, in section 1, defines it as "a family residence, owned, occupied, dedicated, limited, exempted, and restrained in alienability, as the statute prescribes." Possibly, this is a more restricted meaning of the term than that in which it was used in the statute under consideration, but it is the sense

in which the word is generally used by courts and law writers. The meaning of the word " homestead," as used in our statute, evidently includes, not only the land whereon the family of the judgment debtor resides, but also any of his land of the limited value which he may have selected, or may select, for a home, although it may never have been actually occupied as the owner's place of residence. The idea of family residence seems to pervade the entire statute, and the judgment debtor cannot claim land removed from, and in no way connected with, the place where he resides, merely as an exemption, without any intention of using it as a place for a family residence, or in connection therewith. It is clear, from the context, that it was the intention of the legislature to preserve a home for the judgment debtor, and not to exempt from his creditors any quantity of land of the designated value, regardless of the uses to which the property had been, or might be, applied. The real purpose was the conservation of the family home. The law provides for an " exemption of a homestead, to be selected by the debtor." Hence, unless the " homestead " be selected by the debtor, there is no exemption, and such selection must doubtless be made before sale on execution, because upon sale the debtor ceases to be the owner of the property. This is so from the nature of things, although there is no specific provision as to the time when the homestead is to be selected. A failure of selection, therefore, before sale is fatal to the exemption. The homestead is to consist of lands, " together with the appurtenances and improvements thereon." This also indicates family use, because the appurtenances and improvements are necessary to the enjoyment of the home.

Without further specific reference to the provisions above quoted, it will be noticed, from an examination of

the whole subdivision, as well as other sections of our laws, that where the word "homestead" occurs, it is suggestive of family home. The policy of the late territory seems to have been to foster families, and secure their permanence as factors of society, rather than to preserve the lands of insolvent debtors only for their own good. It is evident that the statute was not designed for the mere benefit of the impecunious, but to conserve the homes of all classes, as the pillars of the governmental structure. Every head of a family, of high estate or low, either before or when pressed by creditors, is entitled to select out of his land a place for his family home, which shall be exempt under the law. The purpose of such a statute is laudable. The policy under which it is enacted is supported, as tending to promote the best interests of the state, because upon the permanency of the families, which constitute the units of society, depends the progress of civilization, and the welfare of the institutions which the state aims to foster.

Counsel for the respondent cite the cases of *Nance* v. *Hill*, 26 S. C. 227, and *Swandale* v. *Swandale*, 25 S. C. 392, which appear to sustain the contention that it is not necessary that the homestead should be the place of residence, or intended residence, of the person claiming the exemption. The decisions in those cases, however, were based on a provision of the constitution of South Carolina, which differs materially in language from the provisions of our statute. We must therefore decline to follow them in deciding the question before us. The views herein entertained are in harmony with those indicated on several occasions in this court, and have the support of authority. Wapl. Homest. § 2: Thomp. Homest. § 100; *Knudsen* v. *Hannberg*, 8 Utah 203; *Cook* v. *Higley*, 10 Utah 228. The respondent, never having had his family

residence on the land in controversy, and never having selected it as a place for a family home, or with the intention of making it such a home, was not entitled to have his judgment creditor, or the officers acting as his agents, restrained from selling it on execution, and the court erred in making the restraining order.

The cause is reversed and remanded, with directions to the court below to dismiss the action.

ZANE, C. J., and MINER, J., concur.