# Staunton

## Helen E. Carroll v. Arlington County, Virginia, etc.

September 3, 1947.

Record No. 3271.

Present, All the Justices.

The opinion states the case.

*Charles Pickett* and *Harry A. Shockey*, for the plaintiff in error.

No appearance for the defendant in error.

Holt, C. J., delivered the opinion of the court.

Helen E. Carroll was charged with violating a zoning ordinance and found guilty. The trial justice fixed her punishment at the payment of a fine of $10.00 and costs. From that fine she has appealed to this court and has been awarded a writ of error.

This case originated in a warrant, sworn out by Samuel J. Hughes. The warrant of arrest reads:

"WARRANT OF ARREST

"Commonwealth of Virginia,
     Arlington County, to-wit:

"To the Sheriff or any Peace Officer of the said County:

"WHEREAS Samuel J. Hughes 5240 11th St. N. GI. 0176 of the said county, has this day made complaint and information on oath before me, the undersigned Trial Justice for the said county, that Helen E. Carroll, 5239 11th St. No. did on the 16th day of November, 1945, in said county violate section 6, of the zoning ordinance by permitting two families to be housed in a building located on the east 82 feet of lot 9, block 1, Oakview Subdivision, premises known as 5239 11th St. N., which is zoned as a single family residential district, against the peace and dignity of the Commonwealth. These are, therefore, in the name of the Commonwealth of Virginia, to command you forthwith to apprehend and bring before me the body of the said Helen Carroll to answer the said complaint, and to be further dealt with according to law.

"Given under my hand and seal this 16th day of November, 1945.

"HUGH REID,
                    Trial Justice.    (Seal)"

This is the judgment of that Justice: "Defendant found guilty and fined $10.00 & costs."

From that judgment she appealed to the Circuit Court of Arlington County. By consent, her case was submitted to the Judge who heard it without the intervention of a jury. He affirmed the judgment of the trial justice and entered the same judgment.

The defendant is an unmarried woman who lived alone at her home in Arlington county when the warrant against her was sworn out. She had purchased that home five or six years ago, and, so far as this record goes, had lived in it alone from the date of her purchase until the date of her arrest. She works in Washington for the Federal Government as a lawyer in the Department of Veterans Administration. As we have seen, the warrant of arrest bears date November 16, 1945, and charges that Miss Carroll permitted two families to occupy that home. This is what actually occurred:

In the preceding October, a negro man, his wife and three children moved into the basement of this house. The wife works for Miss Carroll but the husband does not. The situation then was one common in Virginia. Negroes live in the basement or attic, and the wife does duty as a domestic servant.

The draftsman of this opinion for more than half a century has had negroes living in his basement or in the adjoining kitchen building which is a part of the residence. Sometimes the woman there has been married; sometimes not. It never occurred to him that in the contemplation of law two families were occupying the home.

In the instant case, however, this negro family did pay some rent, and for the sake of argument we may assume that the case differs from that in which colored people ordinarily live in the basement with the woman serving as a domestic. And therefore we shall proceed upon the theory that in October, 1945, a family moved into the home.

It may be said in passing that no question of race is here

involved. The law would be the same if this basement family were white.

The warrant of arrest charges that the defendant violated the zoning ordinance by "permitting two families to be housed in a building" in a single family residential district in Arlington County, and she was found guilty in the trial court of an offense "as charged."

The ordinance itself does not in terms prohibit the use of a single dwelling by more than one family. It undertakes to accomplish this purpose by excluding such occupancy from a list of "uses permitted."

When one is prosecuted for something made a crime by statute, which had not theretofore been a crime, he has the right to demand that the words there used be given their common acceptation.

At the time these negroes came into the basement, Miss Carroll was living in her dwelling and living there alone. She was not a family. The Century dictionary devotes a column to defining families, and nowhere is it said that a family can consist of one person. That also is the definition in Webster's New International Dictionary, subject to one exception there stated as an exception: The Federal Government in its decennial census treats as a home and family one or more persons living there.

This also is in accord with Bouvier's Dictionary, where it is said: "In common parlance it consists of those who live under the same roof with the *pater-familias*."

The Roman concept of *patria potestas*, in one form or another, is still a part of our common law.

In *Elliott* v. *Thomas*, 161 Mo. App. 441, 143 S. W. 563, the court said:

"The term 'family' is a broad term and has been construed by the courts to take in many persons other than parents and children. The central thought underlying the family relation is that of dependence, and hence any number of persons more than one living together under the same roof, with some one of their number as head who controls the affairs of the househould and upon whom the

others or some of them are, by reason of some legal or moral obligation, dependent, may be said to be a family, and the person in control the head of that family. *Ridenour-Baker Groc. Co.* v. *Monroe,* 142 Mo. 165, 43 S. W. 633."

To the same effect is to be found a host of cases cited in 16 Words & Phrases 218, under the head of "Family—One Person."

If two bachelors were to buy a home in this Arlington county zone and live there alone, could they both be successfully prosecuted as two families living there against the letter of the ordinance?

The only way a single person living alone can become a family is by statute and then only for the purpose named. ▪ Since Miss Carroll was not a family when these negroes moved into her basement, their coming did not make her one. Two families did not then and are not now living in that house. The letter of this zoning ordinance has not been violated nor has its spirit. The coming of this negro family, in which the wife was to serve as a negro servant, brought about a situation common probably to half the houses on Franklin street in Richmond, where social conventions are everywhere adhered to. That the breaking down of social barriers between this white woman and her negro tenants should have irritated her Arlington County, Virginia, neighbors is understandable, but it did not make her a "family."

It is not necessary that we pass upon the constitutionality of this ordinance. We have in substance done so twice already. *West Bros. Brick Co.* v. *Alexandria,* 169 Va. 271, 192 S. E. 881, and *Cherrydale Cement Block Co.* v. *County Board of Arlington County,* 180 Va. 443, 23 S. E. (2d) 158.

She is not guilty under the very terms of the ordinance itself. Section 2 defines a one family dwelling as "A detached building designed for, or occupied exclusively by, one family." That section then goes on to define "family" and tells us that it is "A number of individuals, living to-

gether on the premises as a single non-profit housekeeping unit including domestic servants."

The conclusion which we have heretofore reached is sustained by the statute under which she is indicted. It tells us that a family is made up of "a number of individuals." Certainly Miss Carroll, living alone before this negro family came into her dwelling, was not a "number of individuals." Moreover, domestic servants in terms cannot be counted. This negro woman brought with her her family, as she might have been expected to do; and that situation is not necessarily changed because they paid a small rental.

If we were to assume, for the sake of argument, that there was ever any question about the constitutionality of our zoning statutes, its ghost is now laid to rest.

In an opinion this day handed down by Mr. Justice Eggleston, *Fairfax County* v. *Parker, post,* page 675, 44 S. E. (2d) 9, the constitutionality of reasonable zoning statutes, both inclusive and exclusive, so far as Virginia is concerned, is forever disposed of. In substance they follow their prototype, *sic utere tuo,* a principle older than any statute and as old as society itself. For an elaborate discussion of this subject see "Our Enemy, The State," by Albert Jay Nock.

The judgment against the defendant, which was a fine of $10.00 and costs, should be reversed and the prosecution dismissed, and it is so ordered.

*Reversed.*